IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SAMINA HASHMI, *et al.*,               )
                                       )
          Plaintiffs,                  )
                                       )
     v.                                )     Civil Action No. 1:25-cv-1957 (RDA/WBP)
                                       )
UNITED STATES CITIZENSHIP AND          )
IMMIGRATION SERVICES, *et al.*,        )
                                       )
          Defendants.                  )
                                       )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss (the "Motion").

Dkt. 11. This Court has dispensed with oral argument as it would not aid in the decisional process.

Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is ripe for

disposition. Considering the Motion together with the accompanying Memorandum in Support

(Dkt. 12), Plaintiffs' Opposition (Dkt. 16), and Defendants' Reply (Dkt. 17), this Court GRANTS

the Motion for the reasons that follow.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are a family of foreign nationals, including Samina Hashmi, Aleem Pirzada, A.

Pirzada, and M. Pirzada.[1] Plaintiffs seek to compel Defendant U.S. Citizenship and Immigration

---

[1] A. and M. Pirzada are the other two Plaintiffs' minor children and, accordingly, their full
names are not used here. The Petition is signed only by Plaintiff Samina Hashmi, who is
proceeding *pro se*. To the extent Plaintiff attempts to assert claims on behalf of her husband or
minor children, she cannot do so. *See M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199,
200 (4th Cir. 2014) (noting that "non-attorney parents are not authorized to represent their children

1

Services' ("USCIS") adjudication of their respective Forms I-485, Application to Register Permanent Residence or Adjust Status (the "Adjustment Applications").

On January 27, 2016, Plaintiffs lawfully entered the United States on B-2 tourist visas. Dkt. 1 at 2–3; Dkt. 12-1 at 2, 4, 7, 10. On April 22, 2016, Hashmi's husband filed a Form I-589, Application for Asylum and for Withholding of Removal (the "Asylum Application"), which included Hashmi and their children as derivative applicants. *Id.* On October 24, 2022, Hashmi filed her Adjustment Application pursuant to an approved Form I-140, Immigrant Petition for Alien Workers, sponsored by her employer, Harry's of America. *Id.* Like the Asylum Application, Hashmi included her husband and their children as derivative applicants. *Id.*

On March 13, 2024, USCIS interviewed Hashmi in connection with her Adjustment Application. *Id.* On May 5, 2025, the Arlington Asylum Office interviewed Plaintiffs in connection with their Asylum Application. *Id.* On August 18, 2025, the Arlington Asylum Office placed Plaintiffs in removal proceedings for reconsideration of their asylum case before an Immigration Judge. *Id.* On December 11, 2025, USCIS administratively closed Plaintiffs' pending Adjustment Applications one month later, on December 11, 2025, citing a jurisdiction-stripping provision of the immigration regulations. Dkt. 12-1.

Plaintiffs' next hearing at the Sterling Immigration Court is set for May 19, 2026. *Id.*

## B. Procedural Background

On November 4, 2025, Plaintiffs filed the instant lawsuit *pro se*. Dkt. 1. In their Complaint, Plaintiffs allege that USCIS's failure to adjudicate the Adjustment Applications

---

pro se in federal court"); *Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005) (recognizing "[t]he right to litigate for oneself . . . does not create a coordinate right to litigate for others"). Accordingly, any claims asserted on behalf of Aleem Pirzada or the minor children are also dismissed on this basis.

2

constitutes an "unlawfully withheld or unreasonably delayed" agency action under the Administrative Procedure Act, and they request a writ of mandamus compelling USCIS's adjudication of said applications. *Id.* at 3–4. On February 4, 2026, Defendants filed their Motion to Dismiss for lack of subject matter jurisdiction. Dkts. 11, 12. On February 24, 2026, Plaintiffs filed their Opposition. Dkt. 16. On March 2, 2026, Defendants filed their Reply. Dkt. 17.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. A district court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject-matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.3d 884, 891 (3d Cir. 1977). Moreover, a court may consider evidence extrinsic to the complaint to determine whether

3

subject-matter jurisdiction exists. *Adams*, 697 F.2d at 1219 (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)).

## III. ANALYSIS

Defendants argue that the Court lacks subject matter jurisdiction to hear this lawsuit for being non-justiciable under the standing and mootness doctrines. Dkt. 12 at 2. For the reasons set forth below, Plaintiffs lack standing, and therefore the Court will grant the Motion on that ground.[2]

An inquiry into subject matter jurisdiction includes whether Plaintiffs have standing to bring a lawsuit in court. *See CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (noting that an analysis of standing is "generally associated with Civil Procedure Rule 12(b)(1) pertaining to subject matter jurisdiction"). It is well-established that "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs may establish standing if they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560–61).

Here, the first two elements of standing undisputably exist. Before filing the instant lawsuit, Hashmi had been waiting for over a year to receive a final decision on her Adjustment Application. Dkt. 12-1 at 2. Defendants concede that the inability of Plaintiffs to obtain lawful

---

[2] Because the Court holds that Plaintiffs lacked standing when they filed their Complaint, it need not reach Defendants' mootness argument. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 189–92 (acknowledging the distinction between mootness and standing doctrines); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) ("[M]ootness [is] 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973))).

permanent residency is a constitutionally cognizable injury in fact. Dkt. 12 at 5. This injury is traceable to USCIS, which has the power to grant or deny such status. Thus, Plaintiffs have established the first two elements of standing.

Consequently, the issue of standing hinges on the third element: whether a judgment of this Court may redress Plaintiffs' injury in fact. In other words, Plaintiffs must demonstrate "that [they] personally would benefit in a tangible way from the court's intervention." *Wells v. Johnson*, 150 F.4th 289, 299 (4th Cir. 2025) (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). Moreover, "[a]n injury is not redressable if the court is 'powerless to provide the very relief'" the plaintiff requests." *Sheppheard v. Morrisey*, 143 F.4th 232, 243 (4th Cir. 2025) (quoting *K.C. ex rel. Africa H. v. Shipman*, 716 F.3d 107, 116–17 (4th Cir. 2013)).

Defendants assert that the Court cannot redress Plaintiffs' injury. In their Motion, Defendants argue that the relief Plaintiffs seek—namely, adjudication of their Adjustment Applications by USCIS—is not possible because USCIS lacks jurisdiction to adjudicate the Adjustment Applications following the placement of Plaintiffs in removal proceedings. Dkt. 12 at 6–10. The applicable regulations provide: "USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 C.F.R. § 1245.2(a)(1)." 8 C.F.R. § 245.2(a)(1). In turn, the regulation referenced therein states: "In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file." 8 C.F.R. § 1245.2(a)(1). Employing the canons of statutory construction, Defendants correctly contend that these provisions, as applied to Plaintiffs' situation,

clearly demonstrate that USCIS cannot adjudicate their Adjustment Applications. Dkt. 12 at 6–10.

Defendant's interpretation is consistent with the interpretation of those regulations by other district judges in this District, who have previously held that "the applicable regulations provide that the Immigration Court has exclusive jurisdiction—and thus USCIS lacks jurisdiction—to adjudicate an [I-485] application that is filed by any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien)." *Guevara v. Zanotti*, 399 F. Supp. 3d 494, 501 (E.D. Va. 2019) (granting defendant's motion to dismiss). Similarly, here, Plaintiffs' Adjustment Applications are subject to the jurisdiction of the Immigration Judge, not USCIS. Dkt. 12-1. First, Plaintiffs entered the United States on B-2 tourist visas and are therefore not arriving aliens as defined by 8 C.F.R. § 1.2. Dkt. 12-1 at 2, 4, 7, 10. Even after their period of authorized stay expired, Plaintiffs remained in the United States while awaiting adjudication of various applications for immigration benefits. *Id.* The Arlington Asylum Office placed Plaintiffs in removal proceedings during this period of visa overstay. *Id.* Consequently, Plaintiffs are "alien[s] who ha[ve] been placed in . . . removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status . . . ." 8 C.F.R. § 1245.2(a)(1); *see also Gonzalez v. Mayorkas*, 2014 WL 585863, at *5 (E.D. Va. Feb. 12, 2014) (recognizing that "USCIS is bound by [a] ruling by the Immigration Court and the BIA" and that "it cannot ignore or alter [the] ruling in any way, and the effect of the ruling is to deprive USCIS of any power or authority to adjudicate petitioner's adjustment application"); *Mohammed v. Holder*, 695 F. Supp. 2d 284, 281 (E.D. Va. 2010) ("In sum, the petition for a writ of mandamus ordering the USCIS to adjudicate petitioner's application

6

for adjustment of status is moot because the USCIS has already administratively closed and dismissed her application consistent with its lack of jurisdiction.").[3]

Nor can USCIS share jurisdiction with the Immigration Judge to adjudicate an adjustment application. In their Complaint, Plaintiffs contend that "USCIS retains jurisdiction over employment-based adjustment of status applications even during removal proceedings." Dkt. 1 ¶¶ 3, 22 (citing USCIS Policy Manual, Vol. 7, Part E, Ch. 3(A)). But the regulations clearly refute Plaintiffs' position, and Plaintiffs do not identify the specific language from the USCIS Policy Manual on which they rely.[4] As Defendants correctly point out, 8 C.F.R. § 245.2(a)(1) establishes that only one entity at a time has jurisdiction to adjudicate an alien's adjustment application; USCIS has default jurisdiction unless divested by the initiation of removal proceedings in immigration court. Dkt. 12 at 7. And 8 C.F.R. § 1245.2(a)(1) vests the Immigration Judge hearing a removal proceeding with "exclusive jurisdiction to adjudicate *any* application for adjustment of status" filed by the alien. *Id.* (emphasis added). This provision specifies the Immigration Judge's jurisdiction to be "exclusive" and does not denote the kinds of adjustment applications that a judge can or cannot adjudicate. *Id.*; *cf. Perez-Vargas v. Gonzales*, 478 F.3d 191, 194 (4th Cir. 2007) (holding that immigration courts may conduct factfinding related to employment-based adjustment applications as a consequence of their "exclusive jurisdiction" under 8 C.F.R. § 1245.2(a)(1)).

---

[3] As former U.S. District Judge T.S. Ellis III also recognized in the *Mohammed* case, "adjustment of status is a matter of grace, not right." 695 F. Supp. 2d at 291 (citing *Elkins v. Moreno,* 435 U.S. 647, 667 (1978)).

[4] The version of the USCIS Policy Manual available online provides that Volume 7, Part E, Chapter 3 relates to "Immigrant Visa Availability and Priority Dates" and indicates that such Chapter is "Reserved." *See* USCIS Policy Manual, *available at https://www.uscis.gov/policy-manual/volume-7-part-e* (last visited March 26, 2026).

Thus, USCIS lacks jurisdiction to adjudicate Plaintiffs' Adjustment Applications and therefore cannot redress Plaintiffs' alleged injuries.

Plaintiffs' arguments in their Opposition fail for similar reasons. Plaintiffs argue that, in the absence of subject matter jurisdiction, the Court still retains equity jurisdiction "to remedy agency wrongdoing." Dkt. 16 at 4. Not so. As the Supreme Court has repeatedly emphasized, "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies," in which "[s]tanding to sue is . . . rooted." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016). Not even Congress can "erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 339. Accordingly, in the absence of standing, this Court has no jurisdiction.[5]

In sum, the Court does not have jurisdiction to hear this case and must dismiss Plaintiffs' Complaint. Plaintiffs seek to compel adjudication of their Adjustment Application by USCIS. Dkt. 1 at 4. But, even assuming *arguendo* that such action could be appropriate, the Court cannot do so here where USCIS no longer retains jurisdiction. As such, Plaintiffs lack standing because the Court does not hold the power to redress Plaintiffs' injury through the requested relief. *See Sheppheard*, 143 F.4th at 243.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 11) is GRANTED; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED without prejudice.

---

[5] Because the Court does not rest its decision on mootness, the Court likewise does not address Plaintiffs' arguments on mootness.

To appeal this decision, Plaintiffs must file a written notice of appeal with the Clerk of Court within 60 days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiffs wants to appeal. Plaintiffs need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiffs' right to appeal this decision.

IT IS SO ORDERED.

Alexandria, Virginia
April _1_, 2026

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge

9